IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK09-42011 |
| | ) | |
| RONALD P. HASLEY and | ) | CHAPTER 11 |
| VICKI A. HASLEY, | ) | |
| | ) | |
| Debtors. | ) | |

## **ORDER**

Trial was held in Lincoln, Nebraska, on October 23, 2014, on Debtors' objection to claim of First National Bank of Omaha (Fil. #573, Fil. #581, Fil. #585), a resistance filed by First National Bank of Omaha (Fil. #586), a motion to appoint trustee filed by First National Bank of Omaha (Fil. #574), and a resistance filed by Debtors (Fil. #587). John C. Hahn represents Debtors and Trev E. Peterson represents First National Bank of Omaha ("First National"). Following trial, the parties were given the opportunity to submit closing arguments by brief, and this matter is now ready for decision. This order contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(B) and (O).

For the reasons set forth below, I find that the objections to the claims of First National are without merit and should be overruled. I also find that further information is needed before ruling on the motion to appoint a trustee.

### *FINDINGS OF FACT*

Mr. and Mrs. Hasley filed this case under Chapter 13 of the United States Bankruptcy Code on July 14, 2009, and filed their schedules and statement of financial affairs on July 29, 2009. In Schedule A, Debtors listed ownership in a number of parcels of real property located in Beatrice, Nebraska. They also listed an ownership interest in "Swite Enterprises" under Paragraph 14, which required a listing of "Interests in partnerships or joint ventures." Debtors placed a value of $0.00 on that ownership interest. Schedule D listed First National as having a secured claim in the amount of $463,545.09, and they checked the column under "Disputed" for this claim. Mr. Hasley listed himself as "Self-employed" and is in the business of owning and managing rental properties.

First National filed three proofs of claim, only two of which remain at issue.[1] First National filed its Claim No. 1-1 on July 15, 2009, asserting a balance due of $4,248.28 for a checking account overdraft line of credit. First National also filed Claim No. 26-1 on July 18, 2009, as a secured claim in the amount of $390,044.34. On December 1, 2009, First National filed an amended Claim No. 26-2 in the same amount.

---

[1]Proof of Claim No. 27-1 was subsequently withdrawn by First National after payment in full.

On January 21, 2010, the Chapter 13 trustee issued her "Notice Concerning Claims" pursuant to Nebraska Rule of Bankruptcy Procedure 3007-1(C)(1). In that notice, the Chapter 13 trustee indicated which claims should be deemed allowed, the amount of the claim, and how it should be classified. Included were the claims of First National, as filed. As allowed by Local Rule, the notice specifically provided that:

> Within thirty (30) days from the date of this notice, debtor(s) shall examine the proofs of claim and file a timely written objection to any claim which may be improper. The absence of a written objection will be deemed an approval by the debtor(s) of the claims as recited above.

On February 22, 2010, Debtors filed their objection to the claims of First National.[2] The objection stated that Debtors had requested an accounting of the amounts due, which had not been provided. First National resisted and the claim objection was set for hearing. In the meantime, First National also filed a motion for relief from stay, which was also set for hearing. At the initial hearing on the claims objection, the court determined that a trial was necessary and issued a pretrial order requiring a pretrial statement by April 30, 2010. On April 21, 2010, the motion for relief from stay by First National was denied without prejudice. First National also objected to Debtors' various proposed Chapter 13 plans.

The parties failed to timely file their preliminary pretrial statement regarding Debtors' objection to the claims of First National. However, on June 7, 2010, they filed a status report indicating that they were involved in negotiations on a global resolution of First National's proofs of claim and plan treatment. Accordingly, the date for filing the preliminary pretrial statement was extended to June 30, 2010, and again extended to August 1, 2010.

On August 2, 2010, First National filed its motion for adequate protection and on August 6, 2010, First National filed its portion of the preliminary pretrial statement. However, since the pretrial statement is supposed to be a "joint" statement, this court ordered the parties to file a "joint preliminary pretrial statement" by August 20, 2010. On August 17, 2010, a joint preliminary pretrial statement was filed under which Debtors articulated six different objections to the claims of First National. Specifically:

    1.    FNB did not use property [sic] accounting procedures.
    2.    FNB has failed to apply all payments.
    3.    FNB has collected payments but has not applied payments to claims.
    4.    FNB has failed to provide complete accounting statements.

---

[2]It appears this objection was timely even though the 30th day after the filing of the trustee's notice was February 20, 2010. That date fell on a Saturday, and the next business day was Monday, February 22, 2010. Fed. R. Bankr. P. 9006(a)(1)(C) ("[I]f the last day [of a stated time period] is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.").

        5.    FNB closed account without any record of how or where funds were distributed.

        6.    FNB has made false and misleading statements regarding accounting and property values.

On August 19, 2010, the court ordered that the joint preliminary pretrial statement was binding upon the parties (Fil. #227).

Subsequently, on August 25, 2010, Debtors filed their motion to convert to Chapter 11 (Fil. #270), which was granted on September 17, 2010. After the conversion to Chapter 11, the objection by Debtors to the claims of First National was set for trial to take place on November 16, 2010. In the meantime, Debtors and First National settled First National's motion for adequate protection by filing a stipulation on October 15, 2010. The stipulation called for Debtors to pay adequate protection payments of $2,100.00 per month to be applied to the unpaid principal and interest due on the First National debt. The stipulation was approved by the court (Fil. #336).

On November 9, 2010, the parties advised the court that Debtors' objection to the claims of First National was settled. The court ordered that a stipulation be filed by November 24, 2010 (Fil. #356). That deadline was subsequently extended to December 6, 2010 (Fil. #359). The parties failed to file a settlement agreement or a stipulation. Instead, on December 10, 2010, Debtors withdrew their objection to the First National claims (Fil. #366). The withdrawal states that the objection was withdrawn "for the reason that the matter has been settled between the parties."

On February 7, 2011, First National, among other creditors, objected to Debtors' proposed Chapter 11 plan (Fil. #380). Unfortunately, the parties spent the next three years haggling over the terms of Debtors' proposed plans.

The most recent plan objection by First National was set for trial, and the court ordered the parties to file a joint preliminary pretrial statement. When they did file one, this court found that it was not satisfactory, and ordered as follows:

> The JPPS appears to be an attempt by debtors and Mr. Hahn to try and assert objections to the amount of FNBO's claims under a variety of theories and assertions, even though debtors previously withdrew their objections to FNBO's claims (See Fil. No. 366). The issues to be tried are simply and solely those that pertain to confirmation of debtors' third amended chapter 11 plan (Fil. #477) and the court notes that the proposed plan does not address or assert any of the so-called unresolved legal issues raised in the JPPS. The parties are referred to FNBO's plan objection (Fil. #488) for a description of the confirmation issues. The proposed JPPS fails to present many, if any, issues that pertain to the standards for confirmation under 11 USC 1129. The JPPS is not the time for the parties to throw every conceivable issue against the wall to see what sticks. Instead, it is the time to narrow the issues (both legal and factual) so that the trial can be conducted as efficiently as possible. The trial is solely to find facts. The parties can argue legal issues in briefs

and motions. This bankruptcy case has been pending for five years and the parties have had plenty of time to narrow the issues and determine what facts need to be tried. THEREFORE IT [IS] ORDERED that counsel for the parties shall immediately meet and prepare an amended JPPS, using the current form that the court will provide to them (this filing has had so many continuances that the form of JPPS initially provided to the parties was updated over two years ago). The amended JPPS shall be filed by August 31, 2014.

Order of August 7, 2014 (Fil. #570).

In response, Debtors filed the pending objection to the claims of First National, and First National filed the pending motion to appoint trustee. After a status conference, the court ordered that the claims objection and motion to appoint trustee be heard and that a new plan would be filed after the court rules on the pending objection and motion (Fil. #576). Prior to trial, Debtors amended and supplemented their objection (Fil. #581, #585). The trial was held on October 23, 2014, and the parties have submitted their post-trial briefs.

### *DISCUSSION – CLAIM OBJECTIONS*

Federal Rule of Bankruptcy Procedure 3001(f) provides that a proof of claim executed and filed in accordance with the Bankruptcy Rules shall constitute prima facie evidence of the validity and amount of the claim. The objecting party can rebut a proof of claim's presumptive validity with "substantial evidence." *McDaniel v. Riverside Cnty. Dep't of Child Support Servs. (In re McDaniel)*, 264 B.R. 531, 533 (B.A.P. 8th Cir. 2001). When the objecting party puts forward evidence rebutting the claim, the claimant must then produce additional evidence of the claim's validity. *Gran v. IRS (In re Gran),* 964 F.2d 822, 827 (8th Cir. 1992). The claimant always bears the burden of persuasion. *FDIC v. Union Entities (In re Be-Mac Transp. Co.),* 83 F.3d 1025 n.3 (8th Cir. 1996).

Since all indications are that First National's proofs of claim were executed and filed in accordance with the Bankruptcy Rules, they are entitled to prima facie validity. It is up to Debtors to rebut the presumptive validity with substantial evidence.

The arguments and evidence presented by both parties are somewhat haphazard and disorganized, most likely due to the lengthy and undulating path this matter has taken over the four-plus years before trial. However, even though Debtors' claims objection contained 19 separately numbered paragraphs asserting their objections, the evidence at trial and Debtors' closing argument brief addressed only a few issues. Any issues raised in the claims objection that were not addressed by Debtors at trial or at least in their brief are deemed abandoned. *Citizens Awareness Network, Inc. v. U.S. Nuclear Regulatory Comm'n*, 59 F.3d 284, 293 (1st Cir. 1995) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (citation omitted)). Thus, as described in Debtors' closing argument brief or as raised at trial, the operative objections by Debtors can be summarized as follows:

– The conduct of Debtors has not ratified First National's loan documents or claims and Debtors have not waived their right to challenge the claims.

– First National knowingly and intentionally understated the value of its collateral on its proof of claim forms.

– Mutual mistakes exist in the promissory notes and deeds of trust so they should be reformed.

– Debtors do not believe they owe what First National says they owe.

The objections will each be addressed in turn.

1. *Objection Regarding Debtors' Conduct, Ratification of the Loan Documents, and Waiver of Challenge to the Claims.*

This is not really a claim objection. Instead, it is simply Debtors' reply or opposition to First National's defense of ratification/waiver/estoppel raised in opposition to the claim objection. Nevertheless, it must be addressed.

First National argues that Debtors' claims objections should be denied because, through their course of dealing with First National, Debtors have ratified each of the loans, have waived any objections, and should be estopped from pursuing the objections at this time. I agree.

As discussed previously, while this was a Chapter 13 case, First National filed its proofs of claim and Debtors filed a timely objection. More than four years ago, the parties filed a joint pretrial statement in which Debtors articulated six specific objections to First National's claims (see p. 2, *supra*), all of which they have again raised in some fashion as part of the pending matters. The case converted to Chapter 11 and the claims objection was set for trial to take place November 16, 2010. However, prior to trial, the parties entered into a cash collateral stipulation calling for monthly payments to be made to First National and separately advised the court that the claims objection was "settled." Instead of filing a settlement stipulation, on December 10, 2010, Debtors withdrew their claims objection asserting, again, that the matter was settled.

Notably, when Debtors entered into the cash collateral stipulation (Fil. # 334), they did not reserve any right to continue objecting to First National's claims. In fact, the stipulation states that the parties have resolved the issues raised in the motion for adequate protection. The motion (Fil. #212) very clearly recites the origination, renewal, and documentation history of each of its loans, along with the balance due as of the date of bankruptcy filing. In their response (Fil. #269) to the motion, Debtors do not dispute anything asserted by First National in its motion and, in fact, do not even mention the fact that Debtors had objected to First National's claims. Instead, Debtors concede that there is equity in the property securing First National's claims and offer specific adequate protection payments. That response was followed by the cash collateral stipulation which has now been in place, and performed by Debtors, for more than four years.

Further, when they withdrew their claim objection, Debtors did not reserve any right to again file the objection in the future, nor did they make the withdrawal conditional on reaching an agreement with First National on the terms of a Chapter 11 plan. In fact, it was quite clear that they did not reach any agreement regarding plan treatment because First National filed its objection to Debtors' first Chapter 11 plan on February 7, 2011, less than two months after Debtors withdrew their claim objection. Notwithstanding, Debtors waited almost four years to again object to First National's claims. So, the question is whether the withdrawal of the claims objection, together with the cash collateral stipulation and years of payments, results in a waiver of Debtors' objection to the claims of First National. I find that it does.

Waiver is a "'voluntary and intentional relinquishment or abandonment of a known existing legal right . . . *or such conduct as warrants an inference of the relinquishment of such right . . . .*' (Emphasis supplied.)" *Farmers State Bank v. Farmland Foods, Inc.*, 402 N.W.2d 277, 280 (Neb. 1987) (citing *Five Points Bank v. Scoular-Bishop Grain Co.*, 350 N.W.2d 549, 552 (Neb. 1984)). Clearly, Debtors' conduct described above warrants an inference of the relinquishment of Debtors' earlier objections to the claims of First National. Debtors made a choice years ago to withdraw their objection to First National's claims and have spent several years negotiating the payment terms for those claims. Now, it appears that their attempt to again object to First National's claims is nothing more than an effort to obtain a negotiation advantage regarding the plan terms. Accordingly, I find that by their conduct, Debtors waived all of the claim objections described in the August 17, 2010, joint pretrial statement (Fil. # 225).

  2. *Objection Regarding First National's Valuation of its Collateral*.

Again, this is not really a claims objection. Frankly, I am not sure what it is. It seems Debtors are saying that when First National filed its proof of claim (presumably Claim No. 26-1) on July 18, 2009, it intentionally misrepresented the value of its collateral, apparently in an attempt to bolster its entitlement to adequate protection payments. Debtors claim to have relied on this representation to their detriment when they agreed to pay adequate protection payments to First National.

First National's Claim No. 26-1 was filed as a secured claim in the amount of $390,044.34. In the blank for "Value of Property," the bank inserted $407,500.00. Debtors argue that the value used by First National in 2010 is substantially less than the appraised value at the time. At trial, First National's representative testified that he simply did not agree with the appraised value and used the value he thought appropriate for the collateral.

As an initial matter, this objection regarding the property value used by First National in its claim is one of the claim objections listed by Debtors in the August 17, 2010, joint pretrial statement. Therefore, pursuant to the preceding discussion, it has been waived by Debtors.

In any event, the value of the collateral is not relevant to the allowance of First National's claims. Section 502(b) of the Bankruptcy Code instructs that the court "shall" allow a properly filed claim unless one of the specified exceptions apply. The value of the collateral being greater than indicated by the creditor is not one of the delineated exceptions. The value of the collateral is, of

course, relevant to determining the secured status of the claim. 11 U.S.C. § 506(a). However, as the claim (for $390,044.34) is fully secured whether the value of the collateral is $407,500.00 or some higher value as Debtors suggest, valuation under § 506 is simply not an issue.

Therefore, this objection has been waived and is not a valid claims objection, so it is overruled. To the extent Debtors are claiming to have been misled into paying adequate protection payments – an assertion that appears dubious, at best – their remedy would have been to pursue relief related to the stipulation for adequate protection. A claims objection is simply not the proper vehicle.

      3.      *Mutual Mistakes in Loan Documents*.

Again, this does not appear to be a valid "objection" to the claims of First National. Nevertheless, it will be addressed.

Debtors claim that the deeds of trust securing their obligations to First National should not have contained cross-collateralization clauses. However, all of the deeds of trust do contain cross-collateralization clauses, other than the very first deed of trust in the lending relationship. Mr. Hasley testified that he did not want the loans to be cross-collateralized and First National's representative also testified that Mr. Hasley requested the loans not be cross-collateralized. However, First National's representative also testified that he did not have the authority to change the loan documents. Interestingly, Mr. Hasley did not testify that First National's representatives ever *agreed* to his request to eliminate cross-collateralization nor did he produce any evidence to support his position. Regardless, the recorded deeds of trust with cross-collateralization clauses have been on file in the public records for more than ten years and it is now too late for Mr. Hasley to complain about their terms.

Debtors also claim that the documents in First National's loan files contain alterations and/or do not accurately reflect the documents signed by Debtors. Unfortunately, Debtors had little evidence to support their position. Specifically, Debtors were unable to show copies of documents that they *did* sign to contradict the versions presented by First National. Instead, to support his position that the documents contain mistakes or alterations, Mr. Hasley examined First National's loan files and found problems that he believes support his objection to the claims, which I will attempt to address below.

Mr. Hasley says the loan documents he examined show "two-hole punch" marks, redactions, and miscellaneous writings that did not exist when he signed the documents and do not exist in all versions of the documents in First National's records. It almost seems silly to address these – particularly since it is not clear how they arise to the level of objections to First National's claims. The hole punches and personal identifier redactions are easy enough to understand and are not valid objections. Miscellaneous handwriting on documents in a loan file is not surprising either.

What is surprising is the large "X" written on the second page of a couple of the notes. However, the clear testimony of both Mr. Hasley and First National's representative was that the

"X" or cross-out of the second page of those notes did not exist at the time the notes were signed. Thus, First National and Mr. Hasley are in agreement – the "X" was an alteration after the notes were signed and has no bearing on First National's claims.

The bottom line is that Debtors had the burden to overcome the presumption of validity of First National's claims and they failed to produce any evidence to support their position that the documents are not enforceable due to a mutual mistake.

4.     *Debtors Do Not Believe they Owe the Claims to First National.*

This actually is a valid basis to object to a claim. *See* 11 U.S.C. § 502(b)(1). With regard to Claim No. 1-1, Mr. Hasley testified that he never applied for an overdraft line of credit. First National has the application with his signature, but he claims he signed it without any terms for a line of credit. However, it is undisputed that such a line of credit was extended to him, he overdrew his account, and he paid on the line of credit for several years. Thus, whether he asked for it or not, he did get it and accepted its benefits without complaint. Through his actions, he ratified the line of credit and its payment terms.

Mr. Hasley's testimony about Claim No. 26-1 was simply not credible. Mr. Hasley claims that he is not sure if he owes *any* money to First National. He refused to admit the validity of any of his signatures appearing on the loan documents, claiming he had to see originals to be sure of his signature – and for those instances where he *was* able to review originals, he could not verify his signature due to the supposed alterations referenced above (even though the alterations had nothing to do with his signature). He also claimed the notes did not contain the correct interest rates and that he could not be sure he even borrowed the indicated amounts from First National. With regard to the largest note, a $250,000.00 line of credit, upon direct questioning by the court, Mr. Hasley denied knowing whether he had borrowed that amount, why he borrowed it, or what the money was used for. He had similar testimony as to the other notes. For a man whose profession is the purchase, sale, and operation of rental properties and who claims to be paid for consulting work regarding real estate financial transactions, his sudden bout of amnesia at trial regarding the First National loans was, in a word, ridiculous.

Remarkably, Mr. Hasley even tried to claim Debtors have no liability under a note that they both signed because he wrote the words "no agreement" in the credit agreement disclosure box on the last page of one of the notes (a $91,000.00 note). He did not write it by the signatures on the note, he did not strike the signatures on the note nor otherwise indicate that the note is not enforceable. However, he did make payments on that note for five years until its maturity, then signed a renewal note without any such "no agreement" language. To now assert no liability because of random words he placed in a random place on a note that he paid as agreed and later renewed is unbelievable.

First National filed sworn proofs of claim containing documents showing the debts owed by Debtors to First National. Mr. Hasley seems to be harboring the misconception that if First National fails to properly maintain its documents and loan files, then the loan is somehow discharged. It is

not. While Mr. Hasley dug up a number of problems with First National's loan files (not the least of which is First National's inexplicable lack of disbursement records for some of the loans), Debtors were not able to produce *any* evidence, much less "substantial" evidence, to overcome the prima facie validity of the claims. Accordingly, the claims objections are overruled.

### *DISCUSSION – MOTION TO APPOINT TRUSTEE*

At trial, First National produced the testimony of Jack Irons. Mr. Irons testified that some time after 2009, but prior to November 2011, Mr. Hasley began loaning him money – at first for living expenses and then for a car sales business. Mr. Irons testified that the loans were always in cash – at Mr. Hasley's insistence – and were in increments of $5,000.00, $10,000.00, and $20,000.00 at a time. Later in the lending relationship, Mr. Hasley revealed to him that there were other investors in the business doing the lending and that collateral was needed. So, the company owned by Mr. Irons' son assigned some vehicles to Swite Enterprises as collateral. Mr. Irons testified that was the first he had heard of investors or Swite Enterprises. Mr. Irons further testified that he gave Mr. Hasley "two hundred thousand dollars worth of jewelry" as collateral for the loans, which has not been returned.

Mr. Hasley did not dispute making cash loans to Mr. Irons, but clarified that the loans were made by Swite Enterprises, not Mr. Hasley personally. That is an interesting position for him to take since he told Mr. Irons that there were other investors in the loans and Swite Enterprises is a general partnership owned solely by Mr. and Mrs. Hasley. Mr. Hasley claims that the initial funding for the loans was made by Swite Enterprises with $30,000.00 that Swite Enterprises had earned from consulting services performed by Mr. Hasley. Apparently the relationship soured because in May of 2014, Mr. and Mrs. Hasley "d/b/a Swite Enterprise" filed suit in Lancaster County District Court for collection. Again, no mention of other investors or lenders.

Frankly, I do not believe everything Mr. Hasley said in his testimony, nor do I believe everything Mr. Irons said. However, it is clear that Mr. Hasley was involved in making secret, undocumented and undisclosed cash loans to Mr. Irons during this bankruptcy case. That is a problem. He tried to justify his actions by claiming the loans were made by his partnership and/or with investors, and not from his personal funds. That is not a compelling defense since it seems inappropriate to suggest that an individual Chapter 11 debtor can remove assets (post-petition earnings are property of an individual Chapter 11 estate under 11 U.S.C. § 1115(a)(2)) from the bankruptcy estate by creating a partnership and performing services for which the partnership receives money instead of the individual. There is just something wrong with that suggestion by Mr. Hasley.

The problem is that the testimony was all presented in generalities. Except for some cryptic details in some emails that were created well into the life of the lending relationship, I do not know how much was loaned, when it was loaned, and how much was paid back. I also do not know details about the $30,000.00 that Mr. Hasley supposedly earned for consulting services on behalf of Swite Enterprises and later used as part of the money loaned to Mr. Irons – namely, the services provided, the entity to whom they were provided, the date of payment, etc. I do not know if Mr. Hasley is

holding or ever held $200,000.00 worth of jewelry to collateralize the loans. However, I agree with First National that someone needs to look into this situation and figure out how it all fits into this bankruptcy case.

For those reasons, I am deferring a ruling on the motion to appoint a trustee. I will give Mr. Hasley until December 29, 2014, to reveal to Mr. Petersen, as counsel for First National, and to Mr. Jerry Jensen, as counsel for the United States Trustee, each and every detail he can possibly provide about consulting funds he supposedly earned for Swite Enterprises and the lending relationship with Mr. Irons. He shall make a complete disclosure, under oath, and without prompting and, in addition, shall answer any questions they may have. Indeed, this is an opportunity for Mr. Hasley to rectify a problematic situation, and his actions will be closely considered when I make the final decision on the pending motion.

The Clerk shall provide a copy of this order to Mr. Jerry Jensen, counsel for the United States Trustee. I specifically request that the Office of the United States Trustee consult with Mr. Petersen and Mr. Hahn on the motion to appoint a trustee and, by January 9, 2015, advise the parties and the court whether the United States Trustee supports the pending motion or otherwise has a recommendation for the court.

IT IS, THEREFORE, ORDERED that for the foregoing reasons:

1.    Debtors' objection to the claim of First National (Fil. #573), as amended and supplemented (Fil. #581, #585), is DENIED, and a separate, final judgment shall be entered as to this issue; and

2.    The motion to appoint trustee filed by First National (Fil. #574) is DEFERRED.

DATED: December 15, 2014.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
    *John C. Hahn
    *Trev E. Peterson
    United States Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.